UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DELOREAN L. BRYSON,

           Plaintiff,

v.                                          Case No. 19-cv-1192-pp

OFFICER FRUEHBRODT, OFFICER KORPITA,
OFFICER LAUDEMANN, OFFICER ERNIE,
OFFICER ADKINS, SGT. S., SGT. WALTON,
SGT. FRIEDAL, JOHN DOES 1-2,
DYLAN RADTKE, JOHN KIND,
CAPT. VAN LANEN, A. DEGROOT,
SGT. WYROKER, S. SCHUELER,
O'DONNELL, HOMP, and
JOHN AND JANE DOES #1-15,

           Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT

Plaintiff Delorean L. Bryson, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 when they allowed him to be surrounded in his cell by sewage for several days. Dkt. No. 1. This order resolves the plaintiff's motion to proceed without prepayment of the filing fee and screens the complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act applies to this case because the

plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 19, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $3.58 by September 9, 2019. Dkt. No. 5. After the court granted the plaintiff an extension of time to pay that fee, dkt. no. 8, the court received it on September 11, 2019. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from

3

Case 2:19-cv-01192-PP   Filed 08/03/20   Page 2 of 14   Document 11

such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720

(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. Allegations in the Complaint

On page 2 of the complaint, the plaintiff states that Officers Fruehbrodt, Korpita, Laudemann, Ernie, Adkins, a Sgt. S. (whose name the court cannot read), Sgt. Walton, Sgt. Friedal and two John Does were made aware of inhumane living conditions while the plaintiff was housed in the Restricted Housing Unit at Green Bay. Dkt. No. 1 at 2. He asserts that "[e]ach every last one of them" ignored the fact that his cell had flooded from his shower on February 25, 2019. Id. He says that because the cell flooded, for five days there was sewage throughout, keeping him from praying. Id.

The third page of the complaint, with the heading "2A," lists six named Green Bay staff members and fifteen John and Jane Does. Id. at 3. The plaintiff says John Kind was the security director at Green Bay and was responsible for the "daily operations" and assisting the warden. Id. He says that Van Lanen was the supervising captain of the Restricted Housing Unit, that A. Degroot was an institution complaint examiner, that Wyrocker was the sergeant of the RHU, that S. Schueler was the "acting warden" of the prison and was legally responsible for daily operations (as well as for training and supervising staff and creating and enforcing policies for protecting RHU prisoners), that O'Donnell was "the office of the Secretary . . . at the [Department of Corrections] . . . for all prison complaints," that Homp (or Hemp—it is hard to tell) was a corrections complaint examiner and that the fifteen John/Jane Does

5

were staff members on the first, second and third shifts from February 24, 2018 through March 14, 2018[1]. Id.

At the bottom of page 2, and resuming on page 4, the plaintiff says that Officer Fruehbrodt refused to give him his meals for two days during Fruehbrodt's work shifts because the plaintiff was "placed lower trap (meaning food had to be placed on the floor), back of the cell kneeling." Id. at 2, 4. The plaintiff says that he couldn't do this because of the sewage all over the cell and particularly in that area. Id. at 4. The plaintiff says this deprived him of his daily nutritional value. Id.

The plaintiff asserts that he also was deprived of blankets and sheets, because he had to use the bedding to try to soak up the sewage. Id. He says that he "track[e]d up sewage going back and forth to use the toilet causing the sewage to be all over [his] pillow and bed etc." Id. The plaintiff explains that he continued to bang and yell for help, and on "Thursday they" turned on his shower again, causing more sewage and the smell of urine even more. Id. The plaintiff says that he pressed the emergency button to tell CO Johnson to turn off the shower, but that she ignored him. Id. He says that CO II Walton, the property officer, couldn't deliver his personal belongings because of the sewage all over the cell. Id.

---

[1] The plaintiff states that these officers were on duty between February 24 and March 14, 2018, but because the dates the plaintiff asserts in his statement of facts were in 2019, the court assumes this was a typo, and that the plaintiff meant 2019.

6

The plaintiff alleges that on Friday, February 29, 2019, after his Health Services Unit appointment, Sgt. Friedel moved him to another cell on the same wing (cell 427). Id. He says that while he was in *that* cell, he wasn't provided with basic necessities for more than twenty-four hours (blankets, pillows, toiletries) and that it was extremely cold in the cell. Id.

The plaintiff is suing all defendants in their individual and official capacities. Id. at 5. He requests $30,000 in compensatory damages and $50,000 in punitive damages against each defendant. Id.

  C. <u>Analysis</u>

The plaintiff claims that all the defendants violated his Eighth Amendment rights when they failed to address the sewage in his cell. "Jail officials violate the Eighth Amendment if they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities.'" <u>Budd v. Motley</u>, 711 F.3d 840, 842 (7th Cir. 2013) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Inadequate sanitation and exposure to sewage can create adverse conditions that deprive a plaintiff of the minimal civilized measure of life's necessities. <u>Id.</u>; <u>see</u> <u>also</u> <u>Hoffman v. Hertz</u>, No. 3:15-cv-00289-MJR, 2015 WL 2407274 at *2 (S.D. Ill. May 19, 2015) (allowing a conditions of confinement claim to proceed where the plaintiff alleged exposure to sewage). While certain conditions, considered on their own, may not constitute unconstitutional conditions of confinement, they "may violate the Constitution in combination when they have 'a mutually enforcing

7

effect that produces the deprivation of a single, identifiable human need.'" Budd, 711 F.3d at 842 (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)). The plaintiff has alleged that for five days he was in a cell flooded with sewage, which caused him to be unable to pray or use his bedding, and that for at least two days, he was denied his meals. The plaintiff has stated facts showing that the conditions of his confinement were sufficiently serious.

Next the court must consider whether the plaintiff has stated sufficient facts to indicate that the defendants he has named were deliberately indifferent to the deprivations the plaintiff suffered. He must state facts to show that the defendants acted, or failed to act, despite knowing of a substantial risk of serious harm from the alleged unconstitutional conditions. See Farmer v. Brennan, 511 U.S. 825, 842 (1994); Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019).

The plaintiff alleges that Officers Fruehbrodt, Korpita, Laudemann, Ernie, Adkins, Sgt. S., Sgt. Walton, Sgt. Friedal and two John Does knew about the sewage in the cell and the issues it caused but did nothing about it. While this allegation is general—he does not say how some of these officers knew of the situation—the Seventh Circuit has held that a defendant who "alleged that the defendants knew that he was living in a cell covered in feces for a month and did nothing" had alleged enough, at the pleading stage, to state a clam for deliberate indifference to unconstitutional conditions of confinement. Cobain v. McLaughlin, 717 F. App'x. 605, 611 (7th Cir. 2017). Like the Cobain court, this

8

court finds that the plaintiff has stated enough to allow him to proceed on a deliberate-indifference-to-conditions-of-confinement claim against Officers Fruehbrodt, Korpita, Laudemann, Ernie, Adkins, Sgt. S., Sgt. Walton, Sgt. Friedal and John Does 1 and 2.

The plaintiff also has made specific allegations against some of these defendants. He says that Fruehbrodt refused to give him his meals on two days, because the plaintiff could not kneel down to get to the lower trap because of the sewage. The Seventh Circuit has held that "an allegation of three days without food (more specifically, one full day without food, sandwiched between days without dinner or break-fast) stated a claim for a violation of the Eighth Amendment." Hardeman v. Curran, 933 F.3d 816, 821 (7th Cir. 2019) (citing Woods v. Thieret, 903 F.2d 1080, 1082 (7th Cir. 1990)). The plaintiff may proceed against Fruehbrodt on both an Eighth Amendment claim that Fruehbrodt ignored the issue with the sewage in his cell and that Fruehbrodt denied him food.

The plaintiff claims that Walton couldn't deliver his personal items because of all the sewage in the cell. Liberally construing this allegation, the court thinks the plaintiff is saying that Walton did not get him bedding and hygiene items. The plaintiff may proceed on Eighth Amendment claim against Walton, as well as on his claim that Walton ignored the sewage in the cell.

The plaintiff says that at the end of the five-day period in the flooded cell, Friedel moved him to a different cell. He says that while in the new cell, he was

9

denied blankets, pillows and toiletries and that the cell was cold. The plaintiff does not specifically state that *Friedel* denied him these items, or subjected him to the cold. But at the pleading stage, the court will assume that that is what he meant and will allow him to proceed on those claims against Friedel.

The plaintiff did not include CO Johnson in the list of defendants he has sued. But he alleges that he pushed the emergency button to tell Johnson to turn off the shower, and that she ignored him. The court will allow the plaintiff to proceed on an Eighth Amendment conditions-of-confinement claim against Johnson and will add Johnson as a defendant.

The court will *not* allow the plaintiff to proceed on claims against Dylan Radtke, John Kind, Capt. Van Lanen, A. DeGroot, Wyroker, S. Schueler, O'Donnell and Homp in their individual capacities. The complaint makes no allegations against Radtke, Van Lanen, DeGroot, Wryoker, O'Donnell or Homp. The plaintiff identifies DeGroot, O'Donnell and Homp as people who played roles in the inmate complaint process, but he does not allege that he filed any grievances, or what roles DeGroot, O'Donnell or Homp may have played if he had filed such a grievance. The plaintiff has not pled against these individuals any "factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Regarding Kind and Schueler, the plaintiff alleges that they supervised the daily operations at Green Bay. Dkt. No. 1 at 3. Specifically, he says that

10

Schueler was responsible for training, supervising staff and creating and enforcing policies and procedures. Id. Supervisors are liable for constitutional violations only when the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. The plaintiff alleges only that Kind and Schueler were supervisors; he has not alleged that they knew about the sewage in the plaintiff's cell or that the sewage was preventing him from praying, having safe food to eat and having a blanket or that the staff members were ignoring the plaintiff's pleas for help.

The plaintiff has sued fifteen Jane/John Doe defendants, whom he describes as staff members on either first, second or third shift duty from February 24 through March 14, 2019. The plaintiff does not say what these Doe defendants did or did not do. The court notes that the plaintiff says that his cell flooded on February *25*; he makes no allegations that anyone violated his constitutional rights on February *24*. He says that Friedel moved him out of the flooded cell on February 29, and that he suffered further deprivation for another twenty-four hours—until March 1. He has not alleged that anyone violated his constitutional rights between March 2 and March 14, 2019. The court will not allow the plaintiff to proceed against these fifteen Doe defendants. If, once he receives information from the named defendants (which

11

he can request once the court allows the parties to start the discovery process), he may ask to amend his complaint to add defendants if he learns the names of other individuals who he believes violated his rights.

Finally, the plaintiff says that he is suing the defendants in their official capacities. Claims against employees in their official capacities are treated as claims against the governmental entity itself. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008). To state a claim that governmental entities are liable for the acts of their employees, a plaintiff must allege that the "acts were carried out pursuant to an official custom or policy." Id. The plaintiff has not alleged that Dylan Radtke, Capt. Van Lanen, A. DeGroot, Wyroker, O'Donnell or Homp took *any* actions to violate his rights. Regarding the remaining defendants, the plaintiff has not alleged that their actions occurred because of an official custom or policy in the prison. The court will not allow the plaintiff to proceed on any official capacity claims.

To summarize: the plaintiff may proceed on Eighth Amendment conditions-of-confinement claims against Officers Fruehbrodt, Korpita, Laudemann, Ernie, Adkins, Sgt. S., Sgt. Walton, Sgt. Friedal, John Does 1 and 2 and C.O. Johnson. The plaintiff has not stated a claim upon which relief can be granted against Dylan Radtke, John Kind, Capt. Van Lanen, A. DeGroot, Wyroker, S. Schueler, O'Donnell, Homp or John/Jane Does 1-15 and the court will dismiss them as defendants.

12

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** Dylan Radtke, John Kind, Capt. Van Lanen, A. DeGroot, Wyroker, S. Schueler, O'Donnell, Homp and John/Jane Does 1-15 as defendants.

The court **ORDERS** the Clerk of Court to amend the caption to add Officer Fruehbrodt, Officer Korpita, Officer Laudemann, Officer Ernie, Officer Adkins, Sgt. S., Sgt. Walton, Sgt. Friedal, John Does 1 and 2 and C.O. Johnson as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Fruehbrodt, Korpita, Laudemann, Ernie, Adkins, Sgt. S., Sgt. Walton, Sgt. Friedal, John Does 1 and 2 and C.O. Johnson. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions. After the court enters the scheduling order, the plaintiff may make discovery requests (written questions or requests for documents) on the named defendants to identify the real names of John Doe defendants. Once

he knows the real names of Doe defendants, he should file a motion asking the court to substitute the real names for the Doe placeholders. Again, the plaintiff should not serve any discovery requests upon the named defendants until *after* the court enters a scheduling order.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$346.42** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will enter a separate order **REFERRING** this case and the plaintiff's other case, Case No. 19-cv-893, to Magistrate Judge Stephen Dries for pretrial proceedings.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

14

who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 3rd day of August, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**